UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGENCY REALTY GROUP, INC.,

    Plaintiff,

v.                                                Case No: 12-10594
                                                  Honorable Victoria A. Roberts

MICHAELS STORES, INC.,

    Defendant.

_____/

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (2) GRANTING DEFENDANT SUMMARY JUDGMENT; AND (3) DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION**

**I.    INTRODUCTION**

Regency Realty Group, Inc. ("Landlord" or "Regency") filed this action for a declaration that it has an ongoing right to terminate the Shopping Center Lease ("Lease") it entered into with Michaels Stores, Inc. ("Tenant" or "Michaels"). Michaels asserts a counterclaim against Regency for breach of contract; it seeks injunctive and declaratory relief.

Two motions were pending for hearing on March 5, 2012: (1) Regency's Motion for Summary Judgment (Doc. 5); and (2) Michaels' Motion for Preliminary Injunction (Doc. 8). The parties stipulated to an Order Regarding Lease Termination. Michaels maintains that the Stipulated Order does not moot its request for a preliminary injunction.

Regency's Motion for Summary Judgment is **DENIED.** Judgment enters as a

matter of law for Michaels.

Michaels' Motion for Preliminary Injunction is **DENIED**.

## II. BACKGROUND

The following facts, taken from the pleadings, do not appear to be in dispute.

Michaels is a large national retailer of arts and crafts materials. Michaels has operated a retail store at the Fenton Village Marketplace in Fenton, Michigan (the "Shopping Center") since September of 2001. Regency owns the Shopping Center.

On January 8, 2008, Regency and Michaels entered into a Lease for 23,828 square feet of retail space at the Shopping Center. The parties executed a Memorandum of Lease that day, which Michaels recorded with the Genesee County Register of Deeds on or about March 14, 2001. The initial term of the Lease was ten years and ended on February 28, 2011, but the Lease contains two five-year options to extend. Michaels exercised the first option to extend, so the Lease, as extended, expires on February 29, 2016.

The Court is asked to interpret two provisions of the Lease: (1) the On-Going Co-Tenancy Requirement; and (2) the Exclusive Use Provision.

### A. The On-Going Co-Tenancy Requirement

The On-Going Co-Tenancy Requirement requires Regency to lease the anchor store in the Shopping Center to a regional or national tenant meeting certain requirements. It also sets forth the remedies available to the parties if Regency fails to satisfy the requirement.

One remedy available to Tenant if Landlord fails to maintain an anchor tenant is

to pay reduced "Alternative Rent."   The pertinent part of the Lease reads:

> 16.3 <u>Failure of Other Required Lessees to Operate.</u> [ . . . ] If at any time after the Rental Commencement Date the On-Going Co-Tenancy Requirement is not satisfied, all Minimum Rent shall be abated until such time as the On-Going Co-Tenancy Requirement is satisfied, and in lieu thereof, Tenant shall pay to Landlord on a monthly basis, thirty (30) days after the end of each calendar month, as "Alternative Rent," an amount equal to the product of (i) the entire amount of Gross Sales . . .made upon the Premises during such month or the portion thereof for which Alternative Rent is payable, multiplied by (ii) three percent (3%), but in no event will such Alternative Rent exceed the Minimum Rent which would have been payable for such period in the absence of this provision.

Regency initially satisfied the On-Going Co-Tenancy Requirement by entering into a lease with Borman's, Inc. to operate a Farmer Jack's Supermarket as anchor tenant.  However, around July 5, 2007, Farmer Jack ceased operations at the Shopping Center and Landlord failed to find another anchor tenant.  Michaels continuously paid the Alternative Rent from the time Farmer Jack ceased operations to the present.  In addition, in a letter dated January 18, 2008, Michaels reserved its right to exercise any other remedies available to it in the Lease.

The Lease provides Tenant a continuing right to terminate if the On-Going Co-Tenancy Requirement is not met for six months or more.  It states:

> In addition to the rights of Tenant to pay "Alternative Rent," if (a) the non-satisfaction of the On-Going Co-Tenancy Requirement shall continue for a period of six (6) months beyond the initial failure to meet the On-Going Co-Tenancy Requirement and for so long as such non-satisfaction shall, or (b) the Initial Co-Tenancy Requirement is not satisfied within six (6) months after the date on which the Rental Commencement Date would otherwise have occurred but for the failure to satisfy the Initial Co-Tenancy Requirement, and for so long as such non-satisfaction shall continue, Tenant shall have the right to terminate this lease by sixty (60) days' written notice delivered to Landlord.

The parties agree that because the On-Going Co-Tenancy Requirement is not satisfied, Michaels has a continuing right to terminate the Lease upon sixty days' notice.

3

The Lease also provides Landlord a right to terminate the Lease in the event it fails to satisfy the On-Going Co-Tenancy Requirement. It states:

> Landlord shall likewise have a right to terminate this Lease at the end of the twelfth (12th) month following the initial nonsatisfaction of the Co-tenancy Requirement by giving sixty (60) days prior written notice to Tenant of the termination.

The parties dispute the meaning of this provision. Michaels argues that it gives Regency a "*one-time* option, at a fixed point in time, to terminate the lease in the event it fails to satisfy the On-Going Co-Tenancy Requirement." Regency says its right to terminate is continuing, the same as Michaels'.

### B. The Exclusive Use Provision

The Lease also contains an Exclusive Use Provision which prohibits Regency from leasing any space in the Shopping Center to any of Michaels' commercial competitors. The relevant portion of the Lease states:

> 16.4.1 <u>Limitation on Use.</u> Neither Landlord nor any entity controlled by Landlord will use, lease (or permit the use, leasing or subleasing of) or sell any space in or portion of the Shopping Center or any property contiguous to the Shopping Center . . . owned or controlled now or at any time hereafter by Landlord or any affiliate of Landlord, to any "craft store" selling arts and crafts, and arts and crafts supplies, picture frames or picture framing services, framed art, artificial flowers and/or plants, artificial floral and/or plant arrangements, or wedding or party goods (except apparel) . . . .

The Lease grants Tenant various cumulative remedies in the event a violation of the Exclusive Use Provision exists, including reduced rent, the right to terminate the lease, and injunctive relief.

Regency admits that it entered into a new lease with Hobby Lobby, one of Michaels' main competitors, and that it "is barred by the Lease with Tenant from

allowing Hobby Lobby to operate in the Shopping Center in competition with Tenant."[1] On February 6, 2012, Landlord notified Tenant of its intent to terminate the Lease pursuant to Section 16.3 unless Tenant nullified the termination by agreeing to return to payment of the Minimum Rent. On February 7, 2012. Tenant's counsel informed Landlord that it does not have the right to terminate the Lease.

On February 8, 2012, Landlord executed a new lease with Hobby Lobby for the anchor tenant space. The new lease is contingent upon the termination of Michael's Lease; Michaels must vacate the Shopping Center. Landlord has ninety days to notify Hobby Lobby that the lease with Michaels is terminated, and that Michaels vacated. If the contingency is not satisfied within ninety days of February 8, 2012, Hobby Lobby or Regency may terminate the new lease at their discretion.

### III.  Procedural History

Regency alleges two causes of action against Michaels: (1) declaration that Landlord has an ongoing right to terminate the lease; and (2) reformation of contract. Regency seeks a declaratory judgment that it acted within its rights under the Lease by sending a termination notice to Michaels. Specifically, it says that the Lease provides it with an ongoing right to terminate in the event the On-Going Co-Tenancy Requirement is not satisfied, just as it does to Michaels. In the alternative, Regency argues that the parties contemplated that the Lease would provide each an ongoing right to terminate; therefore, the Court should reform its language to conform to the parties' intent.

---

[1] The parties stipulated that Michaels would nullify the Termination Notice and return to payment of Minimum Rent pending resolution of the parties' claims, and that Regency would terminate its new lease with Hobby Lobby.

Michaels asserts counterclaims for (1) breach of contract; (2) declaratory relief; and (3) injunctive relief. Michaels states that Regency breached the Lease by purporting to terminate it even though it was not contractually entitled to do so. Michaels also states that Regency breached the Exclusive Use provision of the Lease by entering into a new lease with one of its main competitors, Hobby Lobby. Michaels seeks a declaratory judgment that Regency does not have an ongoing right to terminate the Lease, and that the Exclusive Use provision of the Lease prevents Regency from entering into a new lease with Hobby Lobby. Lastly, Michaels asks the Court to enjoin Regency from terminating the Lease and from entering into a new lease with Hobby Lobby.

Regency filed a motion for summary judgment on its claim for declaratory relief. It says that if the Court enters summary judgment that the Lease grants it an ongoing termination right, its contract reformation claim will become moot.

## IV. ANALYSIS

The central question in this litigation is whether Landlord properly exercised its termination rights. If the termination was proper, then Tenant's counterclaims fail.

### A. Regency's Motion for Summary Judgment

The facts are set forth above and will not be repeated here. Regency supports its motion with the Affidavit of Ryan Shane Ertel, Senior Leasing Agent at Regency. Michaels supports its factual positions in response with the Declaration of Janet S. Morehouse, Senior Director - Real Estate Administration at Michaels.

The sole issue is whether the Lease provides Regency with a continuing right to

terminate the Lease upon the nonsatisfaction of the Co-Tenancy Requirement for twelve months, or rather a one-time option to terminate exercisable only at the end of the twelfth month following initial nonsatisfaction of the Co-Tenancy Requirement.

### i.   Standard of Review

The Court will grant summary judgment in favor of the moving party if that party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e)(2). The Court views the evidence in favor of the non-moving party. *Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 138 (6th Cir. 1993). However, the evidence supporting the plaintiff's position must be more than a mere scintilla; it must be sufficient for the jury to reasonably find in favor of the plaintiff. *Liberty Lobby*, 477 U.S. at 252. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict- whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Id.* (citation and internal quotation marks omitted) (emphasis in original).

### ii.   Parties' Arguments

At issue is Section 16.3 of the Lease which concerns the parties' right to terminate the Lease in the event the Co-Tenancy Requirement is not satisfied.  The

section addressing Landlord's right to terminate states: "Landlord shall likewise have a right to terminate this Lease at the end of the twelfth (12th) month following the initial nonsatisfaction of the Co-tenancy Requirement by giving sixty (60) days prior written notice to Tenant of the termination." This follows immediately after the provision granting Tenant the right to terminate after six months and "for so long as such non-satisfaction shall continue." *See* p.3, *supra*.

Both parties state that this contractual language is clear and unambiguous; nevertheless, they dispute its meaning.

Regency maintains that the provision must be harmonized with the language directly above it granting Tenant an ongoing right to terminate. Regency says that harmonizing the two passages is consistent with one of the cardinal rules of contract interpretation: that the contract must be construed as a whole. Further, Regency says that "[t]here is nothing about this sentence that creates or even implies that the right to terminate is anything other than ongoing."

Regency says that the use of the term "likewise" in the provision regarding Landlord's rights is further proof that the passage must be construed consistent with the manner in which a Tenant can exercise its termination right. Regency says that the term "likewise" has the effect of incorporating the phrase "and for so long as such non-satisfaction shall continue" from the previous passage. Regency concludes that "[b]y using the word 'likewise' in the sentence providing Landlord with its termination right, Section 16.3 clearly applies the same procedure to both Tenant's and Landlord's termination rights, with the only difference being that Tenant may terminate after six months and Landlord must wait twelve months."

In addition, Regency argues that if the contract is not interpreted to provide Landlord with an ongoing termination right, two absurd results would follow. First, Regency says that if "likewise" does not incorporate the general procedures identified in the sentence granting Tenant its right, Landlord would be able to terminate even after a new anchor tenant began occupying the space. This result clearly was not contemplated by either party. Second, Regency says that the language giving Landlord a termination right "at the end of the twelfth (12th) month" is only workable if that date is a condition precedent that must be met in order for Landlord to exercise the termination right thereafter. Tenant's interpretation that the date is a deadline rather than a condition precedent "would require Landlord to issue its termination notice on the exact, precise, single day that reflected the 'end of the twelfth (12th) month following the initial unsatisfaction of the Co-Tenancy Requirement." Regency says Tenant's interpretation is only workable if the contract sets forth Landlord's termination rights with great specificity. Regency says it fails to do so; it doesn't specify the date that constitutes the end of the twelfth month. Therefore, Regency says Michaels' interpretation is absurd.

In short, Regency says that "likewise" cannot be read out of the sentence because it would violate the principle of statutory construction requiring every word to be assigned meaning. In addition, likewise means that the general procedures for exercising the termination right identified in the sentence granting Tenant its right are incorporated into the sentence granting Landlord its right. It follows that Landlord also has an ongoing right to terminate, exercisable after twelve months rather than six.

Tenant, on the other hand, says that the plain language of the contract gives Landlord a one-time option to terminate exercisable at the end of the twelfth month of

9

non-satisfaction of the Co-Tenancy Requirement. Landlord did not exercise its option to terminate at that time; it cannot do so now.

Tenant says that the fact that the parties used language granting tenant an ongoing right to terminate ("and for so long as such non-satisfaction shall continue") but did not use the same language with respect to Landlord's right to terminate is dispositive. It shows that the parties knew how to grant a continuing option but chose not to do so with respect to Landlord. Tenant says that Landlord is really asking the Court to impermissibly alter the plain language of the contract by replacing "at the end of the twelfth month" with "at any time after the twelfth month." The use of the word "at" rather than "after" was a deliberate decision that the Court must respect. Lastly, Tenant says Landlord's argument that it is absurd to require a party to terminate on a particular date is a red-herring because there is nothing extraordinary about requiring a party to do something on a precise date. For example, a lease has a particular start and end date; rent is due on a particular date; etc.

Michaels says there is no genuine issue of material fact with respect to the claims set forth in Regency's Complaint, and that judgment should enter in Michaels' favor on those claims as a matter of law.

### iii. Discussion

Regency properly supported its motion for summary judgment with a sworn affidavit. *See* Fed. R. Civ. P. 56(c)(1). The materials Michaels submitted in response do not contradict Regency's factual allegations. *See* Fed. R. Civ. P. 56(e)(2). Both parties agree that there is no genuine issue of material fact regarding Regency's claims and that the Court may enter judgment as a matter of law.

The Court finds that there is no genuine issue as to any material fact. It is undisputed that the lease between Regency and Michaels contains the On-Going Co-Tenancy Requirement, and that the Requirement has not been satisfied since July 2007. It is also undisputed that Regency attempted to exercise its termination rights on February 8, 2012. All that remains is for the Court to interpret the Lease and determine if Regency's termination of Michaels was proper.

The Court begins by reiterating the guiding principles of contract interpretation under Michigan law. The proper interpretation of a contract is a question of law in Michigan. *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 543 (Mich. Ct. App. 2007). "The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127 n.28 (1994). The Court must limit its analysis to the words within the four corners of the document; it "does not have the right to make a different contract for the parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning." *UAW-GM Human Resource Center v. KSL Recreation Corp.*, 579 N.W.2d 411, 414 (Mich. Ct. App. 1998) (internal citation omitted). "Contractual language is construed according to its plain and ordinary meaning, and technical or constrained constructions are to be avoided." *Dillon v. DeNooyer Chevrolet Geo*, 550 N.W.2d 846 (Mich. Ct. App. 1996). Courts may not impose ambiguity on clear contract language. *Grosse Pointe Park v. Michigan Muni. Liability &. Prop. Pool*, 473 Mich. 188, 198 (2005). Only when contractual language is ambiguous does its meaning become a question of fact. *Coates,* 741 N.W.2d at 543.

The parties agree that the plain language of the Lease provision granting

11

Landlord the right to terminate is unambiguous and that it must be given its plain and ordinary meaning. However, they dispute whether Regency's purported termination of Michaels on February 8, 2012, violates the clause. But, "[t]he fact that the parties dispute the meaning of a [contract] does not, in itself, establish an ambiguity." *Gortney v. Norfolk & Western Ry. Co.*, 549 N.W.2d 612, 615 (Mich. Ct. App. 1996) (internal citations omitted). Whether a contract is ambiguous is a question of law for the court. *Port Huron Ed. Ass'n v. Port Huron Area School Dist.*, 452 Mich. 309, 323 (1996)

The Court agrees that the provision of the Lease granting Landlord's termination right is unambiguous. Further, the Court finds that the provision grants Landlord a one-time option to terminate Tenant at the end of the twelfth month following non-satisfaction of the Co-Tenancy Requirement. Landlord did not timely exercise its right to terminate; it is barred from doing so now.

The Lease plainly and unambiguously grants Tenant an ongoing and continuing right to terminate ("and for so long as such non-satisfaction shall continue..."). Neither party disputes this. The fact that the provision granting Landlord a right to terminate does not include this same language is determinative. Regency and Michaels are both sophisticated parties that have presumably negotiated and entered into numerous commercial leases. Presumably, both parties acted upon the advice of counsel in drafting, negotiating, and entering into the Lease. The fact that the parties used language granting a continuing option in Michael's termination provision and did not use that same language in Regency's option to terminate is convincing evidence that Regency does not have an ongoing option. The proper inference is that the parties considered whether to grant Landlord an ongoing right to terminate but ultimately

decided to limit that right to Tenant.

The Court is unconvinced by Plaintiff's argument that the use of the term "likewise" in the provision granting Landlord's termination right incorporates the language which provides Tenant with an ongoing and continuing right to terminate. The use of the term likewise indicates that Landlord also has the right to terminate; it does not indicate that Landlord's termination right is procedurally identical to Tenant's. After the term likewise, the contract describes the procedures by which Landlord may exercise its termination right. These procedures are materially different from those granted Tenant. Landlord essentially asks the Court to alter the plain language of the contract by changing "at the end of the twelfth month" to "after the end of the twelfth month." The Court, however must honor the parties' bargain and respect the plain language of the contract as written. *See Nextep Systems, Inc. v. OTG Management, Inc.*, No. 10-14473, 2011 WL 3918871 at *11 (E.D. Mich. Sept, 7, 2011) (Roberts, J.) ("The Court may not alter the plain language of the [contract] by reading requirements into it that are not there.").

Nor does the Court agree with Landlord that this reading of its termination provision leads to absurd results. First, there is nothing extraordinary about requiring the parties to do something on a precise date. The fact that the Lease does not set forth a specific date upon which Landlord must exercise its termination right is obviously because such date depends upon the date when the On-Going Co-Tenancy Requirement ceases to be satisfied. Regency's strained hypothetical about what would happen if it attempted to terminate the lease at the end of the twelfth month even though the co-tenancy clause had been satisfied in the meantime is unconvincing.

13

Assuming such a scenario would ever occur, Tenant could simply issue a letter within 30-days recognizing that it had returned to paying Minimum rent and nullifying the termination notice, all as contemplated by the Lease.

### iv. Conclusion

The Lease unambiguously grants Landlord a one-time option to terminate the Lease exercisable at the end of the twelfth month of non-satisfaction of the Co-Tenancy Requirement. Landlord did not timely exercise its right to terminate. Its attempt to do so on February 8, 2012 is invalid. Landlord's motion for summary judgment is denied. Judgment on the termination issue enters for Tenant as a matter of law. *See* Fed. R. Civ. P. 56 (f); *Excel Energy Inc. v. Cannelton Sales Co.*, 246 Fed.Appx. 953, 960-61 (6th Cir. 2007).

### B. Michaels' Motion for Preliminary Injunction

A preliminary injunction is an extraordinary remedy designed "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). When presented with a motion for preliminary injunction, a court addresses four factors: (1) the likelihood of success on the merits; (2) irreparable harm that could result if the injunction is not issued; (3) the impact on the public interest; and (4) the possibility of substantial harm to others. *Basicimputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). The party moving for a preliminary bears the burden to affirmatively demonstrate that it is entitled to injunctive relief. The burden "is much more stringent than the proof required to survive a motion for summary judgment." *Nextep Systems, Inc. v. OTG Management, Inc.*, No. 10-14473, 2011 WL

14

3918871 (E.D. Mich Sept. 7, 2011).

Michaels has not met its burden of proof; it cannot show that irreparable harm could result if the injunction is not issued. "Absence of irreparable injury must end this court's inquiry." *Vander Vreken v. Am. Dairy Queen Corp.*, 261 F. Supp. 2d 821, 824 (E.D. Mich 2003). The parties entered into a Stipulated Order in which Regency agreed to terminate its new lease with Hobby Lobby and Michaels agreed to return to paying the Minimum Rent pending a determination of the parties' rights under the Lease. In addition, Regency has repeatedly maintained throughout this litigation that under no scenario would Michaels and Hobby Lobby occupy the Shopping Center simultaneously.

The Court finds that there is no present danger that Hobby Lobby will occupy the shopping center in violation of the Exclusive Use provision of the Lease. In addition, since the Court found that Regency did not have a right to terminate the Lease with Michaels, there is no present danger that Michaels will be evicted from the Shopping Center. Lastly, the parties agreed to enter into a protective order to prevent the disclosure of confidential financial information. Thus, the present posture of this case does not present a risk of irreparable injury to Michaels; if circumstances change, Michaels can return to Court to seek a preliminary injunction.

## V.  CONCLUSION

The Lease does not allow Regency to terminate Michaels' tenancy. Regency's motion for summary judgment is **DENIED**. Judgment enters on Regency's termination

15

claim as a matter of law for Michaels. Michaels' Motion for Preliminary Injunction is **DENIED**.

This case will proceed on Regency's claim for reformation, and Michaels' counterclaims.

**IT IS ORDERED.**

S/Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: March 6, 2012

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 6, 2012.

s/Carol A. Pinegar  
Deputy Clerk

---