UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGENCY REALTY GROUP, INC.,

     Plaintiff,

v.                                       Case No: 12-10594

                                               Hon. Victoria A. Roberts

MICHAELS STORES, INC.,

     Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S COMBINED MOTION FOR RECONSIDERATION AND SUMMARY JUDGMENT (DOC. 63) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 65)

**I.    INTRODUCTION**

      This matter is before the Court on Plaintiff's combined motion for reconsideration and summary judgment, and Defendant's motion for summary judgment.

      Regency Realty Group, Inc. ("Landlord" or "Regency") filed this action for a declaration that it has an ongoing right to terminate the Shopping Center Lease ("Lease") it entered into with Michaels Stores, Inc. ("Tenant" or "Michaels"), or to reform the Lease. Michaels asserts counterclaims against Regency for breach of contract arising from wrongful termination of the Lease and violations of the Lease's exclusive use and confidentiality provisions.

      For the following reasons, both motions are **GRANTED IN PART** and **DENIED IN PART**.

**II.    BACKGROUND**

The following facts are undisputed. Michaels is a large national retailer of arts and crafts materials.  Michaels has operated a retail store at the Fenton Village Marketplace in Fenton, Michigan (the "Shopping Center") since September of 2001. Regency owns the Shopping Center.

On January 8, 2001, Regency and Michaels entered into a Lease for 23,828 square feet of space at the Shopping Center. The parties executed a Memorandum of Lease that day, which Michaels recorded with the Genesee County Register of Deeds. The initial term of the Lease was ten years and ended on February 28, 2011, but the Lease contains two five-year options to extend. Michaels exercised the first option to extend, so the Lease, as extended, expires on February 29, 2016.

Three provisions of the Lease are at issue: (1) the On-Going Co-Tenancy Requirement; (2) the Exclusive Use Provision; and (3) the Confidentiality Provision.

**1. The On-Going Co-Tenancy Requirement**

The On-Going Co-Tenancy Requirement requires Regency to lease the anchor store in the Shopping Center to a regional or national tenant meeting certain requirements. It also sets forth the remedies available to the parties if Regency fails to satisfy the requirement.

One remedy available to Tenant if Landlord fails to maintain an anchor tenant is to pay reduced "Alternative Rent."  The pertinent part of the Lease reads:

16.3 <u>Failure of Other Required Lessees to Operate.</u> [ . . . ] If at any time after the Rental Commencement Date the On-Going Co-Tenancy Requirement is not satisfied, all Minimum Rent shall be abated until such time as the On-Going Co-Tenancy Requirement is satisfied, and in lieu thereof, Tenant shall pay to Landlord on a monthly basis, thirty (30) days after the end of each calendar month, as "Alternative Rent," an amount equal to the product of (i) the entire amount of Gross Sales . . .made upon the Premises during such month or the

2

portion thereof for which Alternative Rent is payable, multiplied by (ii) three percent (3%), but in no event will such Alternative Rent exceed the Minimum Rent which would have been payable for such period in the absence of this provision.

Regency initially satisfied the On-Going Co-Tenancy Requirement by entering into a lease with Borman's, Inc. to operate a Farmer Jack's Supermarket as anchor tenant. However, around July 5, 2007, Farmer Jack ceased operations at the Shopping Center and Landlord failed to find another anchor tenant. Michaels began paying the Alternative Rent when Farmer Jack ceased operations. In addition, in a letter dated January 18, 2008, Michaels reserved its right to exercise any other remedies available to it in the Lease.

The Lease provides Tenant a continuing right to terminate if the On-Going Co-Tenancy Requirement is not met for six months or more. Section 16.3 further states:

> In addition to the rights of Tenant to pay "Alternative Rent," if (a) the non-satisfaction of the On-Going Co-Tenancy Requirement shall continue for a period of six (6) months beyond the initial failure to meet the On-Going Co-Tenancy Requirement and for so long as such non-satisfaction shall, or (b) the Initial Co-Tenancy Requirement is not satisfied within six (6) months after the date on which the Rental Commencement Date would otherwise have occurred but for the failure to satisfy the Initial Co-Tenancy Requirement, and for so long as such non-satisfaction shall continue, Tenant shall have the right to terminate this lease by sixty (60) days' written notice delivered to Landlord.

The parties agree that because the On-Going Co-Tenancy Requirement is not satisfied, Michaels has a continuing right to terminate the Lease upon sixty days' notice.

The Lease also provides Landlord a right to terminate the Lease in the event it fails to satisfy the On-Going Co-Tenancy Requirement. Section 16.3 further states:

> Landlord shall likewise have a right to terminate this Lease at the end of the twelfth (12th) month following the initial nonsatisfaction of the Co-Tenancy Requirement by giving sixty (60) days prior written notice to Tenant of the termination.

3

The parties dispute the meaning of this provision. Michaels argues that it gives Regency a *one-time* option, at a fixed point in time, to terminate the Lease in the event it fails to satisfy the On-Going Co-Tenancy Requirement. Regency says its right to terminate is continuing, the same as Michaels'.

### 2. The Exclusive Use Provision

The Lease also contains an Exclusive Use Provision which prohibits Regency from leasing any space in the Shopping Center to any of Michaels' commercial competitors. The relevant portion of the Lease states:

> 16.4.1 <u>Limitation on Use.</u>  Neither Landlord nor any entity controlled by Landlord will use, lease (or permit the use, leasing or subleasing of) or sell any space in or portion of the Shopping Center or any property contiguous to the Shopping Center . . . owned or controlled now or at any time hereafter by Landlord or any affiliate of Landlord, to any "craft store" selling arts and crafts, and arts and crafts supplies, picture frames or picture framing services, framed art, artificial flowers and/or plants, artificial floral and/or plant arrangements, or wedding or party goods (except apparel) . . . .

The Lease grants Tenant various cumulative remedies in the event a violation of the Exclusive Use Provision exists, including reduced rent, the right to terminate the lease, and injunctive relief.

Regency admitted that it entered into a new lease with Hobby Lobby, one of Michaels' main competitors, and that it "is barred by the Lease with Tenant from allowing Hobby Lobby to operate in the Shopping Center in competition with Tenant."[1]

### 3. The Confidentiality Provision

The Lease contains a Confidentiality Provision which prohibits Regency from

---

[1]The parties stipulated that Michaels would nullify the Termination Notice and return to payment of Minimum Rent pending resolution of the parties' claims, and that Regency would terminate its new lease with Hobby Lobby.

4

divulging the monetary and operating terms of the Lease or providing any copy of any part of the Lease to anyone except for certain individuals. It states:

> 17.15 <u>Confidentiality of Lease Terms.</u>  Landlord will treat the monetary and operating terms and conditions of this Lease as confidential and will not divulge same to any person other than any existing or prospective mortgagee of the Shopping Center or any prospective purchaser of Landlord's interest in this Lease. Landlord shall not furnish copies of all or any part of this Lease to a person other than to a party as described in the preceding sentence.

## III.   PROCEDURAL HISTORY

 On February 6, 2012, Landlord notified Tenant of its intent to terminate the Lease pursuant to Section 16.3 unless Tenant nullified the termination by agreeing to return to payment of the Minimum Rent. On February 7, 2012. Tenant's counsel informed Landlord that it did not have the right to terminate the Lease. This litigation followed.

On February 10, 2012, Regency filed this action, alleging two causes of action against Michaels: (1) declaration that Landlord has an ongoing right to terminate the lease; and (2) reformation of contract. Regency seeks a declaratory judgment that it acted within its rights under the Lease by sending a termination notice to Michaels. Specifically, it says that the Lease provides it with an ongoing right to terminate in the event the On-Going Co-Tenancy Requirement is not satisfied, just as it does to Michaels. In the alternative, Regency argues that the parties contemplated that the Lease would provide each an ongoing right to terminate; therefore, the Court should reform its language to conform to the parties' intent.

Michaels filed counterclaims for breach of contract, declaratory relief, and injunctive relief.

5

On March 6, 2012, the Court granted summary judgment to Michaels on Regency's claim for declaratory relief. The Court found that the provision of the Lease granting Landlord's termination right is unambiguous: its plain language grants Landlord a one-time option to terminate Tenant at the end of the twelfth month following non-satisfaction of the Co-Tenancy Requirement; Landlord did not timely exercise its right to terminate, and is barred from doing so now. Determinative of this finding is the fact that the same language granting Tenant an ongoing and continuing right to terminate is not included in the provision on Landlord's right to terminate. The Court reasoned that Regency and Michaels are sophisticated parties who presumably negotiated and entered into numerous commercial leases and acted upon the advice of counsel in drafting, negotiating, and entering into the Lease. And, given the different language used to state Tenant and Landlord's respective rights to terminate, the Court inferred that the parties considered whether to grant Landlord an ongoing right to terminate but ultimately decided to limit that right to Tenant.

The Court also denied Michaels' request for a preliminary injunction, finding no danger that Regency would lease to Hobby Lobby, evict Michaels, or disclose confidential information. The parties entered into a Stipulated Order in which Regency agreed to terminate its new lease with Hobby Lobby and Michaels agreed to return to paying the Minimum Rent pending a determination of the parties' rights under the Lease. And, Regency has repeatedly maintained throughout this litigation that under no scenario would Michaels and Hobby Lobby occupy the Shopping Center simultaneously. Furthermore, the parties also agreed to enter into a protective order to prevent the disclosure of confidential financial information.

6

Following the Court's March 6, 2012 order, the case proceeded on Regency's claim for reformation and Michaels' counterclaims.

On March 19, 2012, Michaels filed amended counterclaims for breach of contract based on wrongful termination of the Lease and violations of the Lease's exclusive use and confidentiality provisions. Michaels alleges that Regency breached the Lease by purporting to terminate it even though it was not contractually entitled to do so. Michaels also alleges that Regency breached the Exclusive Use provision of the Lease by entering into a new lease with Hobby Lobby; it asks the Court to enjoin Regency from entering into a lease with Hobby Lobby. Lastly, Michaels claims Regency breached the Confidentiality Provision by divulging the monetary and operating terms of the Lease to persons other than existing or prospective mortgagees of the Shopping Center or prospective purchasers of Regency's interest in the Lease; it seeks an injunction against Regency to prevent further unauthorized divulgence.

On April 30, 2013, Regency filed a combined motion for reconsideration and summary judgment. On that day, Michaels also filed a motion for summary judgment.

## IV.    STANDARD OF REVIEW

### 1. Motion for Reconsideration

Local Rule 7.1(h)(3) provides the Court's standard of review:

Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. LR 7.1(h)(3).

7

Palpable defects are those which are "obvious, clear, unmistakable, manifest or plain." *Mich. Dep't of Treasury v. Michalec*, 181 F. Supp. 2d 731, 734 (E.D. Mich. 2002). "It is an exception to the norm for the Court to grant a motion for reconsideration." *Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 780 (E.D. Mich. 2010). "[A]bsent a significant error that changes the outcome of a ruling on a motion, the Court will not provide a party with an opportunity to relitigate issues already decided." *Id.*

**2. Motion for Summary Judgment**

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of

8

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *Federal Ins. Co. v. Hartford Steam Boiler Insp. and Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005). "The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Lee v. City of Columbus*, 636 F.3d 245, 249 (6th Cir. 2011). "[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate." *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005).

## V.   ANALYSIS

### 1. Regency's Motion for Reconsideration

Under Local Rule 7.1(h), Regency seeks reconsideration of the Court's order holding that the provision of the Lease concerning its termination right is unambiguous and gives Regency only a one-time option to terminate the Lease which Regency failed to exercise timely.

Regency's motion under Local Rule 7.1(h) is untimely; it was filed over a year after the Court's order. A motion for reconsideration under Local Rule 7.1(h) must be filed within 14 days of entry of the order. E.D. Mich. 7.1(h)(3).

Furthermore, the Court may not construe this motion under Federal Rules of Civil Procedure 59(e) or 60(b). A partial grant of summary judgment--like the Court's March 6, 2012 order--is an interlocutory order because it adjudicated fewer than all of the claims of the parties. *See Blair v. Bd. of Trustees of Sugarcreek Twp.*, 3:07-CV-056, 2008 WL 4372665 (S.D. Ohio Sept. 22, 2008); *see also McWhorter v. ELSEA, Inc.*, 2:00CV473, 2006 WL 3483964 (S.D. Ohio Nov. 30, 2006). Rules 59(e) and 60(b) apply only to final judgments. *See Glass v. Nw. Airlines, Inc.*, 798 F. Supp. 2d 902, 907 (W.D. Tenn. 2011) ("Rule 59(e) governs motions made after judgment has issued, not motions to revise interlocutory orders."); *Consolidation Coal Co. v. U.S. Dep't of Interior*, 43 F. Supp. 2d 857, 863 (S.D. Ohio 1999) (finding that Rule 60(b) is inappropriate for interlocutory orders).

However, although the Federal Rules of Civil Procedure do not specifically address the reconsideration of interlocutory orders, the Sixth Circuit recognizes that a district court may reconsider an interlocutory order under its common law powers and Rule 54(b). *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949,

10

959 (6th Cir. 2004); *see also Kniffen v. Macomb Cnty.,* 04-70497, 2006 WL 3205364 (E.D. Mich. Nov. 3, 2006) (construing a request for reconsideration under Rule 54(b) when the time limit of Local Rule 7.1(h) had expired). The Court's power under Rule 54(b) is discretionary and may be exercised at any time. *McNulty v. Reddy Ice Holdings, Inc.*, 08-CV-13178, 2009 WL 2168231 (E.D. Mich. July 17, 2009). Rule 54(b) states:

> [A]ny order or other form of decision, however designated, which adjudicates fewer than all of the claims ... shall not terminate the action ... and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b).

The Sixth Circuit holds that "[t]raditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 Fed. Appx. at 959.

Regency's argument for reconsideration is, essentially, that discovery revealed that the Court based its decision on an unreliable affidavit of one of Michaels' employees, and discovery produced some of Michaels' documents which allegedly support Regency's interpretation of the Lease.

Thus, Regency's reasons for reconsideration apparently fall under the second and third grounds for reconsideration under Rule 54(b): new evidence, to correct clear error, and prevent manifest injustice. The Court is unpersuaded.

The Court recognized that whether a contract is ambiguous is a question of law. *Port Huron Ed. Ass'n v. Port Huron Area School Dist.*, 452 Mich. 309, 323 (1996). If

contract language is clear and unambiguous, the meaning of that language is also a question of law determined by the Court. *NILAC Int'l Mktg. Grp. v. Ameritech Servs.*, *Inc.*, 362 F.3d 354, 358 (6th Cir. 2004). When a contract allows two or more reasonable interpretations, it is ambiguous and factual development is necessary to determine the intent of the parties. *Nextep Sys., Inc. v. OTG Mgmt., Inc.*, 10-14473, 2011 WL 3918871 (E.D. Mich. Sept. 7, 2011) (citing *Meagher v. Wayne State Univ.*, 222 Mich. App. 700, 722, 565 N.W.2d 401 (1997)).

If "contractual language is unambiguous, [the Court] must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Smith Trust*, 480 Mich. 19, 745 N.W.2d 754, 758 (2008). The Court does not have "authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties," *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 703 N.W.2d 23, 26 (2005), because that would be "contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy," *Wilkie v. Auto–Owners Ins. Co.*, 469 Mich. 41, 664 N.W.2d 776, 782 (2003). Therefore, courts may not consider extrinsic evidence of the parties' intent to vary the meaning of a contract that is clear and unambiguous. *Burkhardt v. Bailey*, 260 Mich. App. 636, 680 N.W.2d 453, 464 (2004).

The parties agreed that the Lease's language was unambiguous and that it must be given its plain and ordinary meaning. Their dispute was whether Regency's

purported termination violated the Lease; but, "[t]he fact that the parties dispute the meaning of a [contract] does not, in itself, establish an ambiguity." *Gortney v. Norfolk & Western Ry. Co.*, 549 N.W.2d 612, 615 (Mich. Ct. App. 1996) (internal citations omitted).

Like the parties, the Court found that the language in the Lease is unambiguous; and, accordingly, gave it its plain and ordinary meaning as a matter of law. Regency's newly-obtained extrinsic evidence does not relate to the Lease's ambiguity nor upset the meaning the Court gave the Lease's language. The Court respected the plain language of the Lease as written; it was not misled.

Reconsideration is inappropriate under Rule 54(b); and, notwithstanding timing issues, Regency's arguments do not demonstrate palpable defects which if corrected would result in a different disposition of the Court's order under Local Rule 7.1(h).

The Court does not consider newly-raised arguments in Regency's reply brief. *See Malin v. JPMorgan,* 860 F. Supp. 2d 574, 578 (E.D. Tenn. 2012) ("[A] movant cannot raise new issues for the first time in a reply brief because consideration of such issues deprives the non-moving party of its opportunity to address the new arguments.") (internal quotation marks omitted).

Regency's motion for reconsideration is **DENIED**.

**2. The Parties' Motions for Summary Judgment**

### A. Count Two: Reformation of the Lease

Both parties move for summary judgment on this Count.

In Count Two, Regency seeks reformation to reflect the parties' intent, alleging

13

that the parties intended that the Lease would give both parties an almost identical ongoing right to terminate the Lease if the On-Going Co-Tenancy Requirement remained unsatisfied.

Under Michigan law, the Court has the equitable power to reform a contract based on clear and convincing evidence that the contract, as drafted, did not conform to the agreement actually made. *Uskiewicz v. City of Alpena*, No. 285834, 2010 WL 199609, at *2 (Mich. Ct. App. Jan. 21, 2010) (citing *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 729 N.W.2d 277, 284–85 (2006)). This power may be applied to unambiguous agreements. *Johnson Family Ltd. P'ship v. White Pine Wireless, LLC*, 281 Mich. App. 364, 372, 761 N.W.2d 353, 359 (2008) (citing *Urick v. Burge*, 350 Mich. 165, 86 N.W.2d 543 (1957)). But, "courts are required to proceed with utmost caution in exercising jurisdiction to reform written instruments." *Id.* (quoting *Olsen v. Porter*, 213 Mich.App. 25, 539 N.W.2d 523, 525 (1995)). "The burden of proof is upon the party seeking reformation to present clear and convincing evidence that the contract should be reformed in order to carry out the true agreement of the parties." *Dingeman v. Reffitt*, 152 Mich. App. 350, 393 N.W.2d 632, 636 (1986). Parol evidence may be considered in deciding whether reformation is appropriate under this standard, even where, as here, the contract is unambiguous and contains a merger clause. *Ameli-Tehrani v. Whiteman*, 09-CV-14126, 2011 WL 1831735 (E.D. Mich. May 13, 2011) (citing *Joyce v. Joyce*, No. 281175, 2009 WL 3929961, at *2 (Mich. Ct. App. Nov.19, 2009)).

Landlord argues that the Lease does not reflect the parties' intent. Landlord says that the Lease negotiations reflect the parties' true intent to grant Landlord an ongoing

right to terminate. Landlord also argues that common industry practice and Tenant's course of conduct evidences the parties' agreed intent, and the Court should harmonize the Lease language to support Landlord's version of the parties' intent.

Tenant says that Landlord is unable to establish by clear and convincing evidence that Landlord is entitled to reformation; Tenant says there is no proof of mutual mistake or fraud. Tenant also says that its objection to Landlord's attempt to terminate the Lease reflects its course of conduct consistent with Tenant's intent that Landlord have a one-time option to terminate.

In light of the parties' evidence and arguments, the Court finds there are numerous issues of genuine fact which affect a determination of the parties' intent regarding Landlord's right to terminate the Lease. These trial issues include, but are not limited to:

(1) The parties' intent during the negotiations; and

(2) Whether Tenant's course of performance reflects an intent to grant Landlord an ongoing right to terminate the Lease.

Because the parties' intent has not been established, the Court need not address Landlord's argument regarding the appropriateness of reformation.

The parties' motions for summary judgment on Regency's reformation claim are **DENIED**.

Tenant also seeks summary judgment on Landlord's Second and Third affirmative defenses of mutual mistake and fraud, based on an alleged lack of evidence in support.

15

Landlord defends against Tenant's counterclaims by saying that: (1) a mutual mistake exists to the extent that the Lease does not grant Landlord an ongoing right to terminate; and (2) if no mistake exists, Tenant defrauded Landlord because Tenant was aware of Landlord's interpretation and Tenant affirmed that it applied the same interpretation to the Lease.

A party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law, *Roth v. NCC Recovery, Inc.*, 1:10 CV 02569, 2012 WL 2995456 (N.D. Ohio July 23, 2012) (citing  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Tenant's request for summary judgment on Landlord's Second affirmative defense is **DENIED**. Landlord produced evidence which may establish mutual mistake. But, whether a mutual mistake existed depends in large part on the parties' intent. The Court has already found that genuine issues of fact remain pertaining to intent. So too, genuine issues of fact remain on this affirmative defense.

Tenant's request for summary judgment on Landlord's Third affirmative defense is **GRANTED**. When fraud is alleged, summary judgment may be granted unless there is sufficient probative evidence produced which, if believed, would clearly and convincingly establish fraud. *In re Auto Specialties Mfg. Co.*, 153 B.R. 503, 506 (W.D. Mich. 1993); *see also Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1446 (6th Cir. 1993).

> [T]o constitute actionable fraud it must appear: (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any

16

knowledge of its truth and as a positive assertion; (4) that he made it with
the intention that it should be acted upon by plaintiff; (5) that plaintiff acted
in reliance upon it; and (6) that he thereby suffered injury.

*In re Auto Specialties Mfg. Co.*, 153 B.R. at 506 (quoting *Hi–Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976)) (internal quotation marks omitted). Landlord does not direct the Court to specific evidence of Tenant's alleged fraud. A trial court is not required to speculate on which portion of the record the non-moving party relies. *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993). The non-moving party bears the burden of designating specific facts showing there is a genuine issue for trial, Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 324, and Landlord has not done so. Landlord has failed to come forward with sufficient evidence to establish fraud.

### B. Counterclaim One: Breach of Contract - Wrongful Termination

Tenant moves for summary judgment on its Counterclaim One.

In Counterclaim One, Tenant alleges that Landlord purported to terminate the Lease without having the contractual right to do it. It says that the purported termination was a separate, material breach, and that it suffered damages, including costs and attorneys fees.

Tenant says that it is undisputed that Landlord sent Tenant the Termination Notice, and that the Court ruled in its Order that Landlord had no legal right to do so.

However, Tenant concedes that if the Court denies summary judgment in its favor on Landlord's reformation claim, summary judgment on Counterclaim One is precluded. Accordingly, because the Court found genuine issues of fact affecting

17

Landlord's reformation claim, summary judgment is also **DENIED** on Tenant's Counterclaim One.

Tenant also seeks summary judgment on Landlord's Seventh affirmative defense to Counterclaim One, which says that Tenant failed to state a claim.

Landlord makes no arguments responding to Tenant's argument against Landlord's Seventh affirmative defense.

Landlord abandoned its Seventh affirmative defense to Counterclaim One, since it failed to oppose Tenant's motion. *See L.W. Matteson, Inc. v. Sevenson Envtl. Servs., Inc.*, 831 F. Supp. 2d 608 (W.D.N.Y. 2011) (contractor abandoned two affirmative defenses by failing to challenge subcontractor's summary judgment motion as it applied to those defenses).

Summary judgment is **GRANTED** in favor of Tenant on Landlord's Seventh affirmative defense to Counterclaim One.

### C. Counterclaim Two: Breach of Contract - Exclusive Use Provision

Both parties move for summary judgment on Tenant's Counterclaim Two.

In Counterclaim Two, Tenant alleges that Landlord materially breached the Exclusive Use Provision by leasing to Hobby Lobby. Tenant seeks an injunction against Landlord to prohibit Landlord from leasing to Hobby Lobby during the term of the Lease, and costs and attorneys' fees.

Tenant also seeks summary judgment on Landlord's Fifth, Sixth, and Seventh affirmative defenses related to this counterclaim.

Landlord argues that it did not breach the Exclusive Use Provision because the

18

lease it entered into with Hobby Lobby was contingent upon the termination of this Lease, which never happened. It says Hobby Lobby never had a "possessory interest," which is required for there to be a lease. Landlord also says that the Court does not have standing to adjudicate this claim because Landlord terminated the lease with Hobby Lobby and the parties stipulated that Landlord would not lease to Hobby Lobby.

Tenant argues that the mere fact of the lease with Hobby Lobby establishes a breach of the Exclusive Use Provision of this Lease.

The Court finds that the Exclusive Use provision requires the granting of a possessory interest for it to be violated. It states: "Landlord will [not] use, lease . . . or sell any space in . . . the Shopping Center . . . to any "craft store." Consistent with the surrounding terms, "lease" is used as a verb, and it means "to grant the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration." LEASE, Black's Law Dictionary (9th ed. 2009). To interpret it otherwise would alter the plain language of the contract by changing "lease" into "enter into a lease." The Court must honor the parties' bargain and respect the plain language of the Exclusive Use Provision as written. *See Nextstep Systems, Inc. V. OTG Management, Inc.*, No. 10-14473, 2011 WL 3918871 at *11 (E.D. Mich. Sept. 7, 2011).

In its March 6, 2012 Order, the Court recognized that Landlord's lease with Hobby Lobby was contingent upon the termination of this Lease. Indeed, the Hobby Lobby lease states:

45. Contingency This [I]ease is contingent upon (I) the termination of the current leasehold of Michael's Arts and Crafts ("Michael's") [sic] ; and (ii) Michael's [sic] vacating the Shopping Center. . . . If Landlord fails to provide Michael's [sic] Termination Notice . . . [and]  so long as Landlord is unable to deliver the

19

> Michael's [sic] Termination Notice, either Landlord or [Hobby Lobby] shall have the right, in its sole discretion, to terminate this [l]ease by providing Notice thereof to the other.

(Doc. 77 at Pg ID 2202).

The Hobby Lobby lease was contingent: "[d]ependent on something else; conditional." CONTINGENT, Black's Law Dictionary (9th ed. 2009). Thus, contrary to Tenant's argument, the Hobby Lobby lease was contingent on the termination of the Lease and Michaels' departure, regardless of whether Hobby Lobby and Landlord retained discretion to terminate it based on Landlord's failure to resolve the contingency.

Because the Lease was never terminated and Michaels never vacated, Landlord never granted a possessory interest to Hobby Lobby. Accordingly, it never "leased" to Hobby Lobby in violation of the Exclusive Use Provision; there is no breach of contract.

Landlord is entitled to summary judgment on Tenant's Counterclaim Two. The Court need not consider Tenant's arguments against Landlord's affirmative defenses to Counterclaim Two.

### D. Counterclaim Three: Breach of Contract - Confidentiality Provision

Both parties move for summary judgment on Tenant's Counterclaim Three.

In Counterclaim Three, Tenant alleges that Landlord materially breached the Lease because it divulged the monetary and operating terms of the Lease in violation of the Confidentiality Provision. Tenant seeks an injunction against Landlord to prohibit Landlord from divulging the Lease' monetary and operating terms, and costs and attorneys' fees.

20

Tenant bases its counterclaim on: (1) Landlord's use of sensitive financial information related to Tenant as an exhibit in a previous motion for summary judgment--which the Court sealed pursuant to Tenant's emergency motion; and (2) Landlord's March 8, 2012 email to Hobby Lobby, which included the language of the Exclusive Use Provision and a description of it. There is no factual dispute on this.

Tenant seeks summary judgment on liability only. Tenant claims it suffered damages in the form of attorneys' fees and litigation costs because it was forced to litigate Landlord's breach of the Confidentiality Provision.

Landlord says that it did not breach the Confidentiality Provision because its communication with Hobby Lobby did not include the "monetary" or "operating" terms of the Lease, and Tenant cannot establish Landlord's future intention to reveal confidential information because Landlord cooperated in protecting confidentiality in this case. In addition, Landlord argues that Tenant suffered no damages and thus cannot satisfy the elements of a breach of contract claim; Landlord says litigation costs to enforce the Confidentiality Provision--alone--cannot meet the element of damages for a valid breach of contract claim. Landlord also argues there is no controversy surrounding this claim because the parties already entered into a protective order to prevent disclosure of confidential information.

In Michigan, the elements of a breach of contract claim are the existence of a contract, a breach of that contract, and damages resulting from that breach. *Pawlak v. Redox Corp.*, 182 Mich. App. 758, 756, 453 N. W.2d 304 (1990).

Because the parties do not dispute the existence of a contract, the Court focuses

its analysis on the alleged breach and damages.

The Court first addresses whether Landlord breached the Confidentiality

Provision. It states:

> 17.15 <u>Confidentiality of Lease Terms</u>. Landlord will treat the monetary and operating terms and conditions of this Lease as confidential and will not divulge same to any person other than any existing or prospective mortgagee of the Shopping Center or any prospective purchaser of Landlord's interest in this Lease. Landlord shall not furnish copies of all or any part of this Lease to a person other than to a party as described in the preceding sentence.

(Doc. 1, Exhibit 1 at Pg ID 37).

Landlord concedes that it filed an affidavit referencing Tenant's confidential

financial information. In addition, Tenant requested--and the Court granted--an

"emergency motion for protective order and to place affidavit under seal." Tenant

argued that the affidavit disclosed the "monetary" terms of the Lease under the

Confidentiality Provision and did not include a judicial proceeding exception.

Landlord did not treat Tenant's financial information as confidential. Indeed, it did

precisely what the Confidentiality Provision prohibits; it described and shared the

Exclusive Use Provision with Hobby Lobby. Tenant satisfies the element of breach.

The Court now addresses whether Tenant satisfies the element of damages.

In Michigan, damages are an element of a breach of contract claim, and if there

are no damages, then there can be no breach of contract action; summary judgment

would be appropriate. *Consol. Rail Corp. v. Grand Trunk W. R. Co.*, 853 F. Supp. 2d

666, 670 (E.D. Mich. 2012) (citing *New Freedom Mortg. Corp. v. Globe Mortg. Corp.*,

281 Mich. App. 63, 69–70, 761 N.W.2d 832 (2008)).

22

Landlord is correct that damages are usually a necessary element of a breach of contract claim. However, its argument that Tenant suffered no damages--because attorney fees incurred in pursuing litigation for the breach do not satisfy the damages element of a breach of contract claim--lacks support and the Court finds it unpersuasive. Indeed, Landlord acknowledges that "no case was located addressing this specific principle under Michigan law," but quotes to a Sixth Circuit case as persuasive support. *See Saltire Industrial v. Waller*, 491 F.3d 522 (6th Cir. 2007). However, *Saltire* involved an analysis of a fraud claim under Tennessee law, *id.* at 530, and the Court does not find it helpful.

In Michigan, damages in the form of attorney fees may support a breach of contract claim if the contract allows for attorneys fees as a remedy for the breach. *See Lieghio v. Loveland Investments*, 285393, 2009 WL 3491620 (Mich. Ct. App. Oct. 29, 2009). In *Lieghio*, the trial court acknowledged that plaintiffs in a breach of contract case failed to prove monetary damages separate from attorney fees. *Id.* at *3. But, the trial court rejected the defendant's argument that no breach of contract could be established without proof of any damage or loss caused by the alleged contractual violation, because the contract specifically allowed for injunctive relief and attorney fees as a remedy for the breach. *Id.* The trial court sustained the claim and awarded the plaintiff attorney fees and costs. *Id.* The defendant appealed, arguing that the plaintiff's claim failed because it did not present evidence on the element of damages. *Id.* But, the Michigan Court of Appeals affirmed the trial court's decision, holding that because the parties "specifically agreed in the covenant not to compete . . . that the breaching party would be responsible for attorney fees, the trial court properly considered those attorney

23

fees as damages for [defendant's] breach." *Id.* at *3-4 (citing *Central Transport, Inc. v. Fruehauf Corp.*, 139 Mich. App. 536, 548, 362 N.W.2d 823 (1984) ("Attorney fees awarded under contractual provisions are considered damages, not costs.").

The Lease specifically allows for attorney fees in case of breach:

> 14.5 <u>Litigation, Court Costs and Attorneys' Fees</u>. In the event that at any time either Landlord or Tenant institutes any action or proceeding against the other relating to the provisions of this Lease or any default hereunder, the prevailing party in such action or proceeding will be entitled to recover from the other party reasonable and necessary costs and attorneys' fees.

(Doc. 1, Exhibit 1 at Pg ID 33). Because Tenant was entitled to attorney fees if Landlord breached, and Tenant incurred them in the ensuing litigation, Tenant satisfies the element of damages for a breach of contract claim.

Landlord's argument that there is no controversy on this counterclaim--based on the parties' protective order--is unavailing. First, in its answer to Tenant's counterclaim, Landlord denied as untrue, that it is prohibited from divulging the Lease's terms under the Confidentiality Provision. Second, it misconstrues Tenant's claim by focusing on the likelihood of future breaches where, instead, Tenant sues for an actual, past breach and resulting damages. Landlord's argument may relate to the appropriateness of injunction relief.

There is no genuine issue of fact. Tenant is entitled to summary judgment on Counterclaim Three on the issue of liability; trial will proceed on the issue of damages. The Court need not address' Tenant's subsequent challenge to Landlord's Sixth and Seventh affirmative defenses to Counterclaim Three.

## VI. CONCLUSION

24

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Regency's Combined Motion for Reconsideration and Summary Judgment, (Doc. 63), and **GRANTS IN PART** and **DENIES IN PART** Michaels' Motion for Summary Judgment, (Doc. 65):

- Regency's motion for reconsideration is **DENIED**;

- The parties' request for summary judgment on Regency's reformation claim is **DENIED**;

- Michaels' request for summary judgment on Regency's Second affirmative defense (mutual mistake) is **DENIED;**

- Michaels' request for summary judgment on Regency's Third affirmative defense (fraud) is **GRANTED;**

- Michaels' request for summary judgment on its Counterclaim One (Breach of Contract-Wrongful Termination) is **DENIED**;

- Michaels' request for summary judgment on Regency's Seventh affirmative defense to Counterclaim One (failure to state a claim) is **GRANTED**;

- Summary judgment on Michaels' Counterclaim Two (Breach of Contract-Exclusive Use Provision) is **GRANTED** in favor of Regency; and

- Summary judgment on Michaels' Counterclaim Three (Breach of Contract-Confidentiality Provision) is **GRANTED** in favor of Michaels' on liability; trial will proceed on damages.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  July 30, 2013

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
July 30, 2013.

S/Carol A. Pinegar
Deputy Clerk

26